UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER A. BEYER | : | |
| 703 Cricket Avenue | : | |
| Glenside, PA 19038 | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | |
| | : | JURY OF TWELVE (12) JURORS REQUESTED |
| KERBECK CADILLAC PONTIAC CHEVROLET, INC. | : | |
| 430 North Albany Avenue | : | |
| Atlantic City, NJ 08401 | : | |
| And | : | |
| SAM DASANO | : | |
| 430 North Albany Avenue | : | |
| Atlantic City, NJ 08401 | : | |
| And | : | |
| FRANK J. TEDESCHI | : | |
| 430 North Albany Avenue | : | |
| Atlantic City, NJ 08401 | : | |
| And | : | |
| PNC BANK | : | |
| 249 Fifth Avenue | : | |
| Pittsburgh, PA 15222 | : | |
| And | : | |
| ALLY BANK | : | |
| 200 Renaissance Center | : | |
| Detroit, Michigan 48265-2000 | : | |

**CIVIL ACTION COMPLAINT**

**I.   Preliminary Statement**

1.   This is an action for an award of money damages, attorney's fees, costs and other relief on behalf of Plaintiff, Christopher A. Beyer, who has been harmed by Defendants' conduct in the course

–1–

of two (2) vehicle transactions with KERBECK CADILLAC and their agents, as well as finance company ALLY BANK.

## II.     Jurisdictional Statement

2.     The jurisdiction in this Court is founded pursuant to 28 U.S.C., §1332, and 1367. Venue is proper in this judicial district pursuant to 28 USC §1391 in that the events giving rise to Plaintiff's claims occurred in this district.

3.     In part this action is brought under N.J.S.A. 56:8-1 et seq. ("The New Jersey Consumer Fraud Act").

## III.     Parties

4.     Plaintiff CHRISTOPHER A. BEYER, is a natural person who resides at 703 Cricket Avenue, Glenside, PA 19038.

5.     Defendant, KERBECK CADILLAC PONTIAC CHEVROLET, INC. ("KCPC") is a corporation licensed to do business in the State of New Jersey, regularly conducting business in Atlantic County and having a principal place of business with a registered corporate headquarters located at 430 North Albany Avenue, Atlantic City, NJ 08401; at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

6.     Defendant, FRANK J. TEDESCHI, is a supervising agent and/or employee of Defendant KCPC, and holds a management position at and/or with said Defendant, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

7.     Defendant PNC BANK (hereinafter "PNC") is a corporation with a principal place of business located at 249 Fifth Avenue, Pittsburgh, PA 15222, and regularly and at all times relevant herein conducted business in the Commonwealth of Pennsylvania and in Atlantic County New Jersey buying Retail Installment Sales Contracts from approved motor vehicle dealers, such as KCPC.

8.  Defendant, ALLY BANK, is a corporation licensed to do business in the State of New Jersey, regularly conducting business in Atlantic County, incorporated according to the laws of Delaware, with a principal place of business at the above-captioned address. Defendant is registered to receive service at 2711Centerville State Road, Suite 400, Wilmington, Delaware, 19808.

9.  At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

10. During all times relevant and to this day, ALLY has and had dealer agreements with numerous dealers in the State of New Jersey and has purchased and serviced hundreds and hundreds of Retail Installment Sales Contracts (RISCs) related to New Jersey residents from New Jersey motor vehicle dealers. Said RISCs are performed in New Jersey by New Jersey residents.

11. Upon information and belief, ALLY collects hundreds and hundreds of monthly payments from New Jersey residents sent from New Jersey related to the aforementioned Retail Installment Sales Contracts.

12. Upon information and belief, ALLY's agents and employees regularly visit the New Jersey dealers with which it has dealer agreements.

### IV. Statement of Facts

13. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

**a) Fraudulent Motor Vehicle Sale (KCPC, DASANO, TEDESCHI)**

14. On or around August 24, 2009, Plaintiff visited the KCPC sales dealership at the location identified above in the State of New Jersey.

15. Prior to the execution of any contracts, and at all times relevant thereafter, the KCPC agents, made the following representations expressly and/or impliedly about the subject Malibu:

      a.    the subject vehicle was in good, safe and operable condition;

–3–

      b.      the subject vehicle was free of defects;

      c.      that the vehicle had no more than $1000.00 worth of previous repairs;

      d.      that the vehicle had been completely and carefully inspected;

      e.      that they would repair any problems found with the used vehicle;

      f.      that defendants were giving plaintiffs the best financing terms available;

      g.      that the vehicle did not have any previous paintwork repairs.

16. Prior to the execution of any agreements, and at all times relevant thereafter, the defendants' agents, and/or those identified on the attached sales document, concealed the following facts from the plaintiff about subject Malibu:

      a.      that the vehicle had defects and/or damage to the head gasket and timing chain;

      b.      that the vehicle had previous damage in excess of $1000.00;

      c.      that the vehicle was defective;

      d.      that the vehicle was unfit and unmerchantable; and

      e.      that they would not repair any problems.

      f.      By a Buyer's Order (BO) and Retail Installment Sales Contract (RISC) dated August 24, 2009 (RISC), the Plaintiff and KCPC ostensibly and apparently agreed to the terms for the financed purchase/sale of the subject 2009 Chevrolet Malibu (VIN: 1G1ZK57759F182735) (Exhibits 1-2).

      g.      The Malibu RISC was sold and assigned to defendant PNC BANK.

17. Prior to the execution of any documents, plaintiff's mother and father, who were with plaintiff during all relevant events, advised defendants DASANO and TEDESCHI that plaintiff suffered from autism and anxiety and could not understand that paperwork and instructed the defendants not to go through the paperwork or have plaintiff sign anything without her presence.

18.     Defendant KCPC failed to sign the Odometer Disclosure Statement. (Exhibit 3).

19.     Plaintiff had repeated problems with the Malibu and repeatedly returned to KCPC for service.

20.     KCPC repeatedly refused to service the vehicle.

21.     KCPC told plaintiff to bring the vehicle to Rafferty Chevrolet.

22.     Rafferty Chevrolet told plaintiff that the vehicle had a damaged head gasket and timing belt, among other problems.

23.     KCPC told plaintiff that the problems were all manufacturing defects and not its responsibility.

24.     On or about September 15, 2010, plaintiff returned to KCPC with his mother to complain once again about the Malibu.

25.     Rather than repair the Malibu, defendants KCPC, TEDESCHI and DASANO tricked plaintiff and his mother to trade-in the Malibu towards the purchase of another vehicle, a 2009 Cadillac.

26.     On or around September 15, 2010, prior to the execution of any contracts, and at all times relevant thereafter, the agents of KCPC made the following representations expressly and/or impliedly about the subject Cadillac:

   a.  the subject vehicle was in good, safe and operable condition;

   b.  the subject vehicle was free of defects;

   c.  that the vehicle had previous purely cosmetic repairs that amounted to no more than $1000.00;

   d.  that the vehicle had been completely and carefully inspected;

   e.  that they would repair any problems;

   f.  that defendants were giving plaintiffs the best financing terms available;

   g.  that the only option for plaintiff was to enter a special program where KCPC would pay part of each monthly payment for 12 months; and

   h.  that plaintiff could return in 12 months and trade-in or refinance the vehicle.

27. Prior to the execution of any agreements, and at all times relevant thereafter, the defendants' agents, and/or those identified on the attached sales document, concealed the following facts from the plaintiff about subject Cadillac:

      a. the Defendants were charging improperly for and/or overcharging for fees and other charges;

      b. the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

      c. the defendants were not charging lawfully for all charges and fees;

      d. that defendants would not refinance or trade the vehicle after 12 months;

28. By a Buyer's Order (BO) and Retail Installment Sales Contract (RISC) dated September 15, 2010 (RISC), the Plaintiff and KCPC ostensibly and apparently agreed to the terms for the financed purchase/sale of the subject 2009 Cadillac CTS (VIN: 1G6DM577990172176) (Exhibits ?).

29. The Cadillac RISC was sold and assigned to defendant ALLY BANK.

30. Defendants KCPC, DASANO and TEDESCHI told plaintiff and his mother that the only vehicle they could sell him was the subject Cadillac and that they could only sell it to him if he entered a special program wherein KCPC would pay part of his monthly payment for 12 months.

31. Plaintiff's mother complained that plaintiff did not want nor need and could not afford such an expensive, luxury vehicle.

32. Defendants DASANO and TEDESCHI told plaintiff and his mother not to worry, because he would only own the vehicle for 12 months, during which KCPC would help by contributing to each monthly payment, and then he could trade or refinance the vehicle at much better terms.

33. Plaintiff's mother advised defendants DASANO and TEDESCHI that she had to run a few errands while the vehicle was being prepared for sale and delivery.

–6–

34. Plaintiff's mother reminded defendants DASANO and TEDESCHI, and KCPC's Business Manager, that plaintiff was autistic and that they were not to request that plaintiff sign any paperwork without her present.

35. When plaintiff's mother returned from running her errands approximately 30-45 minutes later, she was upset to find that the defendants had gotten plaintiff to sign all of the sale related papers.

36. Upon arriving home, plaintiff's father was upset at what transpired, especially that defendants would sell his 24-year old autistic son an expensive, luxury vehicle like a Cadillac that he did not want nor need and could not afford.

37. Plaintiff's father took plaintiff back to KCPC the next day to cancel the sale, but the defendants refused.

38. Defendants told plaintiff and his father that they could not cancel the deal, because they had already sold the Malibu.

39. Several days later, defendants required plaintiff to sign additional financing documents, because defendants alleged there was a "bank approval" issue.

40. Plaintiff was first diagnosed with autism when three years old.

41. Plaintiff received special education and did not attend high school.

42. Plaintiff has received social security disability and suffers from social anxiety.

43. If Plaintiff had known that the vehicle had been in an accident or had been damaged or was defective, was structurally damaged, was not good, safe and operable, was not fit or merchantable, or that any of the charges or fees were overcharged or unlawful, or that the paperwork was completed unlawfully, or that the sellers had lied, then Plaintiff would have not purchased the vehicle.

44. The actions of defendants as before described were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority.

**b)** **PNC**

45. Pursuant to the express terms of the RISC, State of New Jersey common law of assignments, and Statutory law, ALLY "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct, including for all of the claims set forth in this Complaint.

**c)** **ALLY**

46. Pursuant to the express terms of the RISC, State of New Jersey common law of assignments, and Statutory law, ALLY "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct, including for all of the claims set forth in this Complaint.

47. Plaintiff reported the aforementioned misconduct to ALLY, advised that he wanted to cancel the contract, wanted to stop payments, wanted to retain possession of the vehicle as a security interest, and requested that ALLY open an investigation.

48. Defendant ALLY refused to cancel the contract and refused to recognized plaintiff's right to do so or to stop payments or to retain possession of the vehicle.

49. Defendant ALLY refused to open an investigation.

50. Defendant ALLY told plaintiff that the misconduct was between him and the dealer.

**d)** **Additional Allegations**

51. The Plaintiff has no experience in or specialized knowledge related to the automotive industry, and/or related to motor vehicles, motor vehicle sales, motor vehicle repair, and/or consumer finance.

52. At all times relevant, KCPC promised to take good care of the Plaintiff.

53. KCPC stood in a position of trust and confidence with the plaintiff.

54. Plaintiff surrendered substantial control over the financing of the subject purchase.

55. By virtue of their position of trust and confidence, their unequal sophistication and expertise, Defendants had the means to take advantage and exercise undue influence over plaintiff.

56. The purchase or lease of a motor vehicle is one of the largest investments that many, if not most, consumers make.

57. The subject purchase was the plaintiff's first or second greatest investment.

58. Defendants stood in a fiduciary relationship with the plaintiff.

59. Defendants exploited their fiduciary relationship by deceiving the plaintiff regarding the subject vehicle's history and condition, and the party's respective rights and duties under the RISC, and concealing the nature of KCPC's conduct (misconduct).

60. The established business practices discussed in the preceding paragraphs caused plaintiff(s) to be mislead about the vehicle's history, condition, and value, and caused plaintiff to suffer, annoyance, embarrassment, fear, and other general distress damages, and caused plaintiff to be denied the benefits of the consumer protection statutes specifically designed to protect him.

61. Defendants KCPC and ALLY are in the automobile business and regularly extend credit to consumers in the manner described above.

62. The subject vehicle was purchased by the plaintiff primarily for personal use.

63. The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

64. As a result of the Defendants' unlawful actions, the plaintiff has been deprived of the use and value of the vehicle, has incurred expenses for repairs and/or replacement transportation, has suffered consumption and/or damage to their credit rating and credit reputation, and/or has suffered extreme emotional distress, frustration, humiliation, and/or embarrassment.

65. Plaintiff has been and will continue to be financially damaged due to Defendants' intentional, reckless, wanton, and/or negligent failure to honor their contractual obligations and the consumption and/or damage to their credit rating and reputation.

66. During all times relevant the Defendants deceived the plaintiff into believing Defendants' actions were lawful, and/or concealed their actions' unlawful nature.

67. At all times relevant, the Plaintiff relied on Defendants' apparent and claimed experience, sophistication and expertise in inspecting, repairing, selling and/or financing motor vehicles.

### V.     Statement of Counts
### COUNT I
### FRAUD
### PLAINTIFF V. ALL DEFENDANTS

68. Plaintiff incorporates all facts and allegations set forth in this Complaint.

69. As the assignee of the subject RISCs, PNC and ALLY are liable jointly and/or severally for all of the same claims as the dealer defendants.

70. Prior to the execution of any contracts, and at all times relevant thereafter, the KCPC' agents, made the following representations expressly and/or impliedly about the subject Malibu:

       a.    the subject vehicle was in good, safe and operable condition;

       b.    the subject vehicle was free of defects;

       c.    that the vehicle had no more than $1000.00 worth of previous repairs;

       d.    that the vehicle had been completely and carefully inspected;

       e.    that they would repair any problems;

       f.    that defendants were giving plaintiffs the best financing terms available;

       g.    that the vehicle did not have any previous paintwork repairs.

71. Prior to the execution of any agreements, and at all times relevant thereafter, the defendants' agents, and/or those identified on the attached sales document, concealed the following facts from the plaintiff about subject Malibu:

       a.    that the vehicle had defects and/or damage to head gasket and timing chain;

       b.    that the vehicle had previous damage in excess of $1000.00;

   c. that the vehicle was defective;

   d. that the vehicle was unfit and unmerchantable;

   e. that they would not repair any problems.

72. On or around September 15, 2010, prior to the execution of any contracts, and at all times relevant thereafter, the KCPC' agents, made the following representations expressly and/or impliedly about the subject Cadillac:

   a. the subject vehicle was in good, safe and operable condition;

   b. the subject vehicle was free of defects;

   c. that the vehicle had previous purely cosmetic repairs that amounted to no more than $1000.00;

   d. that the vehicle had been completely and carefully inspected;

   e. that they would repair any problems;

   f. that defendants were giving plaintiffs the best financing terms available;

   g. that the only option for plaintiff was to enter a special program where KCPC would pay part of each monthly payment for 12 months; and

   h. that plaintiff could return in 12 months and trade or refinance the vehicle.

73. Prior to the execution of any agreements, and at all times relevant thereafter, the Defendants' agents, and/or those identified on the attached sales document, concealed the following facts from the plaintiff about subject vehicle:

   a. the Defendants were charging improperly for and/or overcharging for fees and other charges;

   b. the Defendants did not conduct the sale and/or financing or complete the paperwork lawfully;

   c. the defendants were not charging lawfully for all charges and fees;

–11–

   d.  that defendants would not refinance or trade the vehicle after 12 months;

   e.  dangerous condition.

74. The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to KCPC, DASANO, and TEDESCHI to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced them to purchase the automobile at the price listed in the purchase agreement.

75. KCPC, DASANO, and TEDESCHI knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

76. The Plaintiff relied on the KCPC's, DASANO's, and TEDESCHI's misrepresentations and were induced to sign the RISC and other documents related to which plainiffs apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement.

77. KCPC's, DASANO's, and TEDESCHI's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

78. As a result of KCPC's, DASANO's, and TEDESCHI's misconduct, the Plaintiff suffered the damages outlined above and in the following additional ways:

   a.  increased purchase costs;

   b.  consumed and/or damaged credit rating and reputation;

   c.  deprived of the use and enjoyment of the vehicles;

   d.  incurred cost of replacement vehicles;

   e.  spent time resolving problems created by Defendants' breach;

   f.  incurred other incidental and consequential damages, including emotional distress; and/or,

g. incurred increased interest and other expenses for financing the purchase of the vehicle.

## COUNT II -
### N.J.S.A. 56:8-1 *et seq.* ("The New Jersey Consumer Fraud Act")

### PLAINTIFF v. ALL DEFENDANTS

79. Plaintiff incorporates all of the facts and allegations set forth in this Complaint.

80. As the assignee of the subject RISCs, PNC and ALLY are liable jointly and/or severally for all of the same claims as the dealer defendants.

81. Plaintiff meets the definition of "consumer" as defined by the act because he purchased a used motor vehicle for personal use.

82. Defendants were dealers within the act because they are a business which sold 3 or more used motor vehicles in the 12 month period previous to plaintiff's purchase.

83. All vehicles purchased were "used vehicles" because they were passenger automobiles not subject to a previous lease agreement, to be operated as second-hand vehicles.

84. As the assignee of the RISC, ALLY is subject to all of the same claims as KCPC.

85. Defendants by their actions described above, violated the New Consumer Fraud Act by:
   a. Misrepresenting the mechanical condition of a used vehicle;
   b. Failing to disclose, prior to sale, any material defect in the mechanical condition of the used motor vehicle which is known to the dealer;
   c. Representing that a used vehicle was free from material defects in mechanical condition at the time of sale; and
   d. Failing to provide a clear written explanation, prior to sale, of what was meant by the term "as is"

86. Defendants by their actions described above, including misrepresenting that the subject vehicles were carefully inspected, were free of damage and/or defects, that the Malibu problems were manufacturing related, that the only or best possible solution was to enter into the special payment assist program and purchase an expensive, luxury vehicle, that defednants would refinance or trade the Cadillac after 12 months, that the Cadillac deal could not be cancelled and/or could not be cancelled because the Malibu had already been sold, that defendants would not have plaintiff sign any paperwork without one of his parents present, enforcing an unenforceable RISC, misrepresenting that the parties rights and conditions thereunder, misrepresenting the credit and financing terms and conditions, deceived plaintiff and induced him to purchase the subject vehicles and to suffer the injuries and damages set forth above and below.

87. Defendants' aforesaid acts constituted unconscionable commercial practices, deception, and fraud.

88. Alternatively, or in addition, said Defendants engaged in acts of omission, including but not limited to knowing concealment, suppression and omissions of material facts in connection with the sale and financing of the subject vehicles.

89. Said Defendants intended for Plaintiff to rely on the aforementioned acts including the unconscionable commercial practices, deception, fraud, false pretense, false promise and misrepresentation, and Plaintiff did reasonably rely on the same.

90. The foregoing acts by Defendants constitute violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*, including § 56:67-8, a result of which caused plaintiff to suffer ascertainable loss, including the difference in value, loss of use, loss of the asset, damage to her credit rating and reputation, and cost of replacement transportation.

91. At all times material, the actions above described, constituted a violation of the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1, *et seq.* (hereinafter "NJCFA"), which Defendant is in violation and liable therefore to Plaintiff.

## COUNT III
**N.J.S.A 12A:9-625 (Uniform Commercial Code Violations)**

#### PLAINTIFF v. PNC and ALLY

92. Plaintiff incorporates all facts and allegations set forth in this Complaint.

93. Plaintiff sent defendant PNC a letter requesting account information and records pursuant in part to N.J.S.A. 12A:9-210 (Exhibit 7).

94. Plaintiff sent defendant ALLY a letter requesting account information and records pursuant in part to N.J.S.A. 12A:9-210 (Exhibit 8).

95. PNC and ALLY were required to respond within 14 days.

96. PNC and ALLY never responded to the aforementioned letter as required under the statute.

97. These U.C.C. violations caused plaintiff actual damages in extreme emotional distress and, in additional and/or in the alternative, statutory damages under N.J.S.A. 12A:9-625.

### COUNT IV
### BREACH OF CONTRACT

#### PLAINTIFF v. ALL DEFENDANTS

98. Plaintiff incorporates all facts and allegations set forth in this Complaint.

99. As the assignee of the subject RISCs, PNC and ALLY are liable jointly and/or severally for all of the same claims as the dealer defendants.

100. Plaintiff contracted with defendants for the purchase of the aforementioned vehicle as well as taxes, registration, tags, service contract, and transfer of title.

101. Plaintiffs performed or satisfied all of his obligations due under the purchase agreement at issue herein.

102. Defendants are in material breach of the aforementioned contract in that they have in the past and continue without justification to negligently, intentionally, willfully, fraudulently, and/or recklessly have failed, and/or refused to deliver to plaintiff the car for which plaintiff contracted, under the agreed upon terms.

103. As a result of defendants' breach, the plaintiff suffered in the following ways:

      a.      received a vehicle the actual value of which was substantially less than the value of the vehicle for which he contracted;

      b.      incurred increased insurance costs on the inflated value of the vehicle;

      c.      incurred increased taxes on the inflated value of the vehicle;

      d.      incurred costs of unanticipated repairs and maintenance;

      e.      spent time resolving problems created by defendants' breach;

      f.      incurred other incidental and consequential damages, including emotional distress.

104. The defendants' actions as herein described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

105. As a result of the defendants' actions detailed above and below, plaintiff has suffered frustration, humiliation, and other bouts and symptoms of emotional distress.

## COUNT V
## NEGLIGENCE

### PLAINTIFF v. ALL DEFENDANTS

106. Plaintiff incorporates all facts and allegations set forth in this Complaint.

107. As the assignee of the subject RISCs, PNC and ALLY are liable jointly and/or severally for all of the same claims as the dealer defendants.

108. Defendants had a duty to provide a valid sales transaction to plaintiffs.

109. The defendants breached this duty in the following respects:

      a.      failing to discover the numerous defects in the vehicle through their inspections of the vehicle and their preparation of the vehicle distribution and/or sale;

      b.      failing to comply with state laws and regulations requiring disclosure of a vehicle's condition;

  c. failing to conduct or negligently conducting safety inspection of the vehicle;

  d. failing to advise plaintiff of the discovery of a possible defect in a timely manner;

  e. failing to institute appropriate policies and procedures to detect defects, and/or to ensure that such information is communicated and disclosed to customers;

  f. failing to train their personnel how to detect finish problems;

  g. failing to hire competent and/or honest personnel, such as mechanics and salespeople;

  h. failing to properly supervise its personnel;

  i. failed to warn or adequately warn the plaintiff and/or other buyers about the condition of the aforementioned vehicle and/or the reliability of the odometer reading;

  j. acted in an otherwise negligent and careless manner under the circumstances.

110. Plaintiff suffered actual damages proximately caused by this negligence as alleged above.

## COUNT VI
## BREACHES OF EXPRESS AND IMPLIED WARRANTIES

### PLAINTIFF v. ALL DEFENDANTS

111. Plaintiff incorporates all facts and allegations set forth in this Complaint.

112. As the assignee of the subject RISCs, PNC and ALLY are liable jointly and/or severally for all of the same claims as the dealer defendants.

113. The representations of the defendants regarding the condition of the subject motor vehicle constituted express warranties and implied warranties governed by the laws of the State of New Jersey.

114. The vehicle was not merchantable, in breach of the implied warranty of merchantability, and it was not fit in numerous respects for the ordinary purposes for which such goods are sold.

115. Plaintiff suffered actual damages proximately caused by these breaches of warranties as alleged above.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

### PLAINTIFF v. ALL DEFENDANTS

116. Plaintiff incorporates all facts and allegations set forth in this Complaint.

117. As the assignee of the subject RISCs, PNC and ALLY is liable jointly and/or severally for all of the same claims as the dealer defendants.

118. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepresentations about the condition of the vehicles and the terms of the sale and financing.

119. Defendants' misrepresentations and/or omission of material facts concerning the vehicles' condition and the terms of the sale and financing, as alleged above constituted negligent misrepresentations.

120. Defendants misrepresented and/or omitted this information to the plaintiff intending to and in fact causing the plaintiff to buy the vehicles or taking or refraining from taking action with respect to the vehicles such as returning the vehicles or rescinding the purchase contract and/or filing suit.

121. As a direct and proximate result of this negligent misrepresentation, the plaintiffs suffered damages as alleged.

## VI. Prayer for Relief

**WHEREFORE**, Plaintiff requests this Honorable Court enter judgment in his favor and against Defendants, individually, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

a. Statutory damages;
b. Forfeiture and return of any loan proceeds or other monies paid to Defendants by Plaintiff;
c. Damages, including;
   i. Actual damages;
   ii. Treble & punitive damages; and
   iii. Attorneys' fees and expenses, and costs of suit.
d. equitable relief.

**WEISBERG LAW, P.C.**

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
Attorney for Plaintiff